```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------x

  JEROME LESLIE,

                       Petitioner,         MEMORANDUM & ORDER
                                              21-CV-1036(EK)
             -against-

  JOHN G. RICH, Elmira Correctional
  Facility Superintendent,

                       Respondent.

--------------------------------------x
```
ERIC KOMITEE, United States District Judge:

        Petitioner Jerome Leslie, proceeding *pro se*, seeks to stay his petition for a writ of habeas corpus pending the exhaustion of his ineffective-assistance-of-trial-counsel (IATC) claim in state court. Respondent opposes the motion for a stay. For the reasons set forth below, Leslie's request to stay these proceedings is denied.

### I. Background

        In May 2016, Leslie was convicted in New York state court of second-degree murder and second-degree criminal possession of a weapon. *See* Mem. of Law in Supp. of Mtn. Seeking for a Stay and Abeyance ("Pet'r Mem.") 3, ECF No. 1-2[1]; *People v. Leslie*, 99 N.Y.S.2d 707, 707 (App. Div. 2019) (mem.). His appellate attorney filed briefs in his direct appeal in

---

[1] It appears that two pages in this document were filed out of order: pages 7 and 8 probably should be the third and fourth pages of the memorandum, respectively.

November 2018, approximately fifteen months before the COVID-19 pandemic began.  Pet'r Mem. 3-4.  The appellate attorney, who was different from the trial counsel, did not argue that trial counsel rendered ineffective assistance.  *See* Letter from Samuel Barr 56, ECF No. 9.

The Appellate Division affirmed the judgment on June 5, 2019.  99 N.Y.S.2d at 707.  Leslie's conviction became final on November 14, 2019, ninety days after the New York Court of Appeals denied leave to appeal.  *People v. Leslie*, 133 N.E.3d 408 (N.Y. 2019) (unpublished table decision); *see Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001).

On October 13, 2020, Leslie filed a *pro se* application for a writ of error *coram nobis* with the Appellate Division.  Writ of Error Coram Nobis App. Method 3-55, ECF No. 9.  He argued that his appellate counsel was ineffective for failing to pursue a defense of "extreme emotional disturbance."  *Id.* at 28-40.  The Appellate Division denied this claim in December 2020.  *People v. Leslie*, 135 N.Y.S.3d 308 (App. Div. 2020) (mem.).

Leslie then filed the instant petition on February 22, 2021, about a week prior to the expiration of the one-year statute of limitations under the Antiterrorism and Effective

Death Penalty Act of 1996 ("AEDPA").[2]  Pet. for Writ of Habeas Corpus ("Pet.") 1, ECF No. 1.  He argues that both his trial and appellate counsel were constitutionally ineffective.  Pet. 3, 6-11.

      Leslie states that he has exhausted his ineffective-assistance-of-appellate-counsel claim (ground two of his petition), but not his IATC claim (ground one).  *Id.* at 5-7.  Respondent agrees that Leslie's IATC claim remains unexhausted because he did not raise the claim on direct appeal and has not filed a motion asserting that claim pursuant to New York Criminal Procedure Law § 440.10.  *See* Opp'n to Mot. to Stay 2-3, ECF No. 8.  Here, Leslie argues that his trial counsel was constitutionally ineffective for pursuing a "justification" defense that, he contends, was inapplicable to the facts of the case, and for failing to pursue the extreme emotional disturbance defense instead.  He asks the Court to stay these proceedings and hold them in abeyance while he returns to state court to exhaust the IATC claim.

## II. Discussion

      Leslie has filed a "mixed petition" — that is, one containing both exhausted and unexhausted claims.  In this

---

[2] *See* 28 U.S.C. § 2244(d)(1).  Respondent initially moved to dismiss Leslie's petition as untimely filed, but has since withdrawn that motion.  *See* Letter Dated Jan. 19, 2022, ECF No. 10.

3

context, "the petition ordinarily must be dismissed unless the petitioner (1) meets the criteria for a 'stay and abeyance' while the petitioner exhausts his claims in state court, or (2) agrees to delete the unexhausted claims." *Gray v. Ercole*, No. 08-CV-3300, 2008 WL 5082868, at *3 (E.D.N.Y. Nov. 25, 2008)[3]; *see also Rhines v. Weber*, 544 U.S. 269, 277 (2005). A district court also has discretion to deny unexhausted claims on the merits. 28 U.S.C. § 2254(b)(2).

In *Rhines v. Weber*, the Court cautioned that "[s]tay and abeyance, if employed too frequently, has the potential to undermine" AEDPA's "twin purposes" — namely, reducing delays in the resolution of habeas petitions and encouraging exhaustion of state remedies prior to habeas filings. 544 U.S. at 276-77. A stay is appropriate, the Court held, only when the petitioner can show (1) that he had "good cause for [his] failure to exhaust his claims first in state court"; (2) that his claims are "potentially meritorious," or (said differently) not "plainly meritless"; and (3) that he has not engaged in "intentionally dilatory litigation tactics." *Id.* at 277-78. Leslie fails on prongs one and two of this test.

---

[3] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

**A.   Good Cause**

*Rhines* did not define the term "good cause."  District courts have determined that good cause "requires a showing of either (1) some factor external to the petitioner [that] gave rise to the default or (2) reasonable confusion, which is more forgiving and incorporates the petitioner's subjective reasons for the delay in seeking state relief."  *E.g.*, *Jeffrey v. Capra*, No. 20-CV-232, 2020 WL 4719629, at *2 (E.D.N.Y. Aug. 12, 2020).

Leslie has not established good cause for the failure to exhaust his IATC claim under either measure.  He provides the following reasons: (1) "the unprecedented [COVID]-19 pandemic essentially shut down New York State Courts"; (2) because of COVID-19, his "family ties" were "adversely impacted to the point [P]etitioner was prevented from receiving the resources (financial, legal and material information) required to adequately prosecute the exhaustion of his state remedies"; and (3) he "suffers from learning disabilities and other mental handicaps as supported by the record to adequately prosecute the exhaustion of his state remedies without family and legal support."  Pet. 5.

Leslie has not identified any specific external factor that impeded his filing.  On the contrary, the procedural history of this case shows that he had the opportunity to present his IATC claim to the state courts.  Leslie was able to

5

timely apply for a writ of error *coram nobis* on the ground of ineffective assistance of *appellate* counsel, containing many of the same arguments he would set forth in his IATC claim. He also acknowledges in his petition that at the time he "drafted and submitted" that application, he had already "discovered the allegations of ineffective assistance of *trial and* appellate counsel." Pet'r Mem. 11 (emphasis added). Leslie has provided no explanation for why he presented only one claim to the Appellate Division and not the other, when he knew about both.

      Leslie's general allegations of hardship from COVID-19 do not suffice. *See, e.g.*, *Banks v. Holbrook*, No. 21-CV-51, 2021 WL 4595769, at *8 (C.D. Cal. Aug. 5, 2021) ("[G]eneralized allegations concerning COVID-19's impact are insufficient to establish good cause.") (report and recommendation). *Compare Trappler v. Russell*, No. 21-CV-343, 2021 WL 3773650, at *2 (W.D.N.Y. Aug. 25, 2021) (finding the "good cause" standard not met where the petitioner asserted that various "pandemic-related restrictions prevented her from exhausting her claims"); *with Moco v. Bell*, No. 20-CV-11132, 2021 WL 4340960, at *1, *5 (S.D.N.Y. Sept. 22, 2021) (finding the standard satisfied where the petitioner asserted that all state filings were suspended by executive order as a result of the pandemic).

      Nor do his general allegations of mental impairment suffice; Leslie does not specifically state how or why his

6

mental impairment impeded his ability to exhaust his IATC claim, and this Court will not attempt to fill that gap. *See generally Lathrop v. Keyser*, No. 20-CV-1608, 2021 WL 603060, at *1 (Feb. 16, 2021) (good cause not established where petitioner did not explain with specificity why he has established good cause, even where petitioner claimed a history of mental health issues). Beyond those conclusory allegations, Leslie provides no other facts to substantiate this alleged impediment.

Moreover, Leslie knew in February 2021 when he filed his petition in this Court (and a motion to stay these proceedings) that he needed to exhaust his IATC claim, but nevertheless opted to file a habeas petition instead of – not in addition to – a Section 440.10 motion in state court. This weighs against a finding of good cause. *See Trappler*, 2021 WL 3773650, at *2 (weighing against a finding of good cause the fact that petitioner failed to "state that she has done anything even to begin to exhaust her state court remedies for her unexhausted claims"); *McCrae v. Artus*, No. 10-CV-2988, 2012 WL 3800840, at *9 (E.D.N.Y. Sept. 2, 2012) (finding the good cause standard not satisfied where "petitioner has demonstrated no confusion about his claims").

Leslie argues that his appellate attorney's failure to raise the IATC claim contributed to his failure to exhaust. In some circumstances, the ineffective assistance of appellate

7

counsel might establish good cause under *Rhines* for a failure to exhaust. *See McCrae*, 2012 WL 3800840, at *9 (finding good cause where appellate counsel did not raise a "complex claim of which [petitioner] was unaware when he filed his habeas petition").

Here, however, Leslie must explain not only why his appellate counsel failed to raise the IATC claim on direct appeal, but also why *he himself* failed to raise the claim for over two years by way of a 440.10 motion. *See Knight v. Colvin*, No. 17-CV-2278, 2019 WL 569032, at *5 (E.D.N.Y. Feb. 11, 2019) (good cause not shown where petitioner could not explain why he did not file a 440.10 motion himself after his appellate counsel declined to do so on his behalf); *accord Young v. Great Meadow Corr. Fac. Superintendent*, No. 16-CV-1420, 2017 WL 480608, at *6 (S.D.N.Y. Jan. 10, 2017) (Moses, M.J.); *Newman v. Lempke*, No. 13-CV-0531, 2014 WL 4923584, at *3 (W.D.N.Y. Sept. 30, 2014) (Schroeder, M.J.). Good cause is not shown where a petitioner was aware that counsel would not be filing a given claim in state court and provides no reason why he did not act, such as through filing the motion *pro se*, in light of this information. *See Knight*, 2019 WL 569032, at *5 ("Petitioner knew of the factual predicates for such a Motion at the time of his appeal . . . . [T]hat Petitioner's appellate counsel disregarded Petitioner's request to file a 440 Motion does not explain why petitioner could not have filed such a motion *pro se*

8

either concurrent with his direct appeal or after his direct appeal was decided."); *Scott v. Phillips*, No. 05-CV-0142, 2007 WL 2746905, at *7 (E.D.N.Y. Sept. 19, 2007) (no good cause where petitioner was aware of the facts underlying his claim when he filed his habeas petition).

Leslie also has not shown "reasonable confusion" on his part as to his unexhausted claim. *See Holguin v. Lee*, No. 13-CV-1492, 2013 WL 3344070, at *3 (S.D.N.Y. July 3, 2013) (Cott, M.J.) (a petitioner cannot plausibly claim "reasonable confusion" where "he explicitly states in his motion that he is seeking a stay of his habeas petition so that he can exhaust his unexhausted claims in New York state court").

Accordingly, Leslie has failed to satisfy this *Rhines* factor, and a stay thus is not warranted.

**B.   Potential Merit**

Even if Leslie had shown good cause for his failure to exhaust, *Rhines* also requires a petitioner to establish that his ineffective-assistance claim is "potentially meritorious." 544 U.S. at 276, 278. An unexhausted claim is deemed to have failed this standard when "it is perfectly clear that the petitioner has no hope of prevailing." *Linares v. People*, No. 04-CV-2973, 2008 WL 2115231, at *2 (S.D.N.Y. May 14, 2008).

Leslie contends that he was deprived of effective assistance because of his counsel's decision to forego an

9

extreme emotional disturbance defense and instead pursue a justification defense. To prevail on this claim, Leslie must show both (1) that counsel's performance fell below the objective standards of reasonableness dictated by prevailing professional norms, and (2) that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687-99 (1984). Under *Strickland*, habeas courts are reluctant to second-guess counsel's strategic decisions. *See Eze v. Senkowski*, 321 F.3d 110, 125 (2d Cir. 2003) ("[W]e indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, which forces the defendant to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."). Measured against this standard, Leslie has failed to make the requisite showing of potential merit.

At trial, Leslie's counsel pursued a theory of justification — namely, that Leslie had shot the victim in self-defense. Pet'r Mem. 2-3; *see* N.Y. Penal Law § 35.15 (one may use physical force upon another if "he reasonably believes such to be necessary to defend himself . . . from what he reasonably believes to be the use or imminent use of unlawful physical force by such other person" and may use "deadly physical force"

10


if "he reasonably believes that such other person is using or about to use deadly physical force" against him).  Under New York law, where a defendant presents evidence supporting a justification defense, the prosecution must disprove it beyond a reasonable doubt.  *People v. McManus*, 496 N.E.2d 202, 203, 205 (N.Y. 1986).  A successful defense of justification requires the defendant's acquittal.  *See* N.Y. Penal Law § 35.05(2); *McManus*, 496 N.E.2d at 205.

The jury evidently considered this defense: during its deliberations (which took five hours over two days), it requested the legal instructions on justification.  Pet'r Mem. 3.  However, it also evidently rejected this defense in convicting Leslie of second-degree murder.  Leslie claims that his counsel should have pursued a defense of extreme emotional disturbance instead and that the justification defense was "incompatible with the law, facts and surrounding circumstances of this case."  Pet. 5.

Extreme emotional disturbance is an affirmative defense under New York law, meaning that the defendant must establish the defense by a preponderance of the evidence.  *See People v. Moye*, 489 N.E.2d 736, 769 (N.Y. 1985) (mem.).  *See generally McManus*, 496 N.E.2d at 205 (contrasting justification with affirmative defenses).  To mount the defense successfully, a defendant must show that he suffered from "a mental infirmity

11

not rising to the level of insanity at the time of the homicide, typically manifested by a loss of self-control." *People v. Roche*, 772 N.E.2d 1133, 1138 (N.Y. 2002); *see* N.Y. Penal Law §§ 25.00(2), 125.25(1)(a). This showing requires two elements: (1) that the defendant "acted under the influence of an extreme emotional disturbance," and (2) "that there was a reasonable explanation or excuse for that disturbance." *Roche*, 772 N.E.2d at 1138. A successful extreme emotional disturbance defense will result in the conviction being reduced from murder to first-degree manslaughter. N.Y. Penal Law §§ 125.20, 125.25(1)(a)(i).

The record in this case provides ample support for trial counsel's reluctance to mount the extreme emotional disturbance defense, because the facts would not have supported it. In Leslie's own recounting, the evidence at trial showed that he went to the victim's building with a loaded weapon and attempted to lure him to the lobby prior to shooting him. Pet'r Mem. 13. This evidence suggests premeditation, which in turn would have undercut a claim of extreme emotional disturbance. In *People v. Bailey*, 37 N.Y.S.3d 592 (App. Div. 2016), for example, the Appellate Division affirmed the trial judge's decision not to instruct the jury on the elements of the extreme emotional disturbance defense. *Id.* at 594-95. The appeals court held that the evidence of the defendant's "premeditated,

12

deliberate, and calculated acts," including his admission that he went to the victim's apartment armed with a knife, was "entirely inconsistent and incompatible with self-serving assertions that he lost control." *Id.* at 594.

In this case, defense counsel could reasonably have decided that the justification defense was the stronger of the two. In his post-arrest interrogation by police, Leslie stated that because of derogatory comments Leslie had made to the victim's cousin (Leslie's ex-girlfriend), the victim had previously expressed hostility toward Leslie. Writ of Error Coram Nobis App. Method 20. Leslie also stated that the victim's cousin had recently stabbed Leslie. *Id.* at 15. And Leslie stated that on the night of the incident, the victim had attempted to sic his pit bull on Leslie; put his hand in his pocket, as if to pull out a gun; and stated that he was going to shoot Leslie. *Id.* at 15, 20. Leslie then shot the victim first. *Id.* at 20-21.

Trial counsel here elected to pursue a defense that was supported by these factors and that would have resulted in an acquittal if successful, instead of pursuing a defense that was improbable and that, if successful, would still have resulted in Leslie's conviction of first-degree manslaughter. *See* N.Y. Penal Law §§ 125.20(2), 125.25(1)(a). A letter by one of Leslie's appellate attorneys provides further support for

13

this strategy, explaining that "any defense theory besides justification would have contradicted [Leslie's] own statements," and instead, trial counsel "tried to use [Leslie's] statements to prove justification." Letter from Samuel Barr 56-57. This was plainly a strategic decision by counsel, and a court "may not use hindsight to second-guess his strategy choices." *Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir. 1994).

In particular, "[t]he tactical decision to pursue a complete, exculpatory defense rather than a partial one enjoys substantial deference." *Rios v. United States*, No. 91-CV-4384, 1992 WL 328931, at *7 (E.D.N.Y. Oct. 13, 1992) (citing cases). Accordingly, Leslie's trial counsel was not ineffective for pursuing an "all or nothing" strategy that was grounded in the evidence, even though it was not ultimately successful. *See Cruz v. Superintendant,* No. 13-CV-2414, 2016 WL 2745848, at *9 (S.D.N.Y. May 11, 2016) (a lawyer's strategic "decision to go for broke . . . cannot form the basis for an ineffective-assistance claim, particularly on federal habeas." (collecting cases)).

Thus, Leslie has not shown that his unexhausted claim is potentially meritorious, and his motion to stay this case must also be denied for this reason.

### III. Conclusion

For the reasons set forth above, Leslie's request for stay and abeyance is denied.  Given that Leslie concedes his failure to exhaust the claim of ineffective assistance of trial counsel, that claim is dismissed; he may proceed, however, with the claim he did exhaust.  This result obtains because, due to the one-year limitation period under AEDPA, "dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief."  *Rhines*, 544 U.S. at 278.

Respondent's motion to dismiss (ECF No. 8) is terminated as withdrawn.  Respondent must submit a response to the petition (as modified by the preceding paragraph) within thirty days of this order.

The Clerk of Court is directed to mail a copy of this order to the Petitioner.

SO ORDERED.

                                                 /s/ Eric Komitee
                                               ERIC KOMITEE
                                               United States District Judge

Dated:    March 29, 2022
           Brooklyn, New York