```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

  JEROME LESLIE,

                      Petitioner,            MEMORANDUM & ORDER
                                              21-CV-1036 (EK)
           -against-

  JOHN G. RICH, ELMIRA CORRECTIONAL
  FACILITY SUPERINTENDENT

                      Respondent.

-------------------------------------x
```
ERIC KOMITEE, United States District Judge:

        Petitioner Jerome Leslie seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Leslie was convicted of murder and firearms possession in connection with the 2013 shooting of a man in Kings County.

        Proceeding *pro se* before this Court, Leslie asserts that his appellate counsel was constitutionally ineffective for failing to argue, on direct appeal, that *trial* counsel had rendered ineffective assistance. Trial counsel was ineffective, in Leslie's view, for pursuing the wrong defense: he asserted a justification theory (effectively self-defense) instead of the affirmative defense of "extreme emotional disturbance."

        For the reasons that follow, Leslie's petition must be denied.

## I. Background

On Christmas Eve 2013, a teenager named Yaquin English was shot and killed outside an apartment building in Coney Island. English was the cousin of Leslie's ex-girlfriend "Ti-Ti"; Leslie's relationship with Ti-Ti had deteriorated after she informed Leslie that she was pregnant. Leslie was arrested and ultimately charged with second-degree murder and criminal possession of a weapon. At trial, defense counsel conceded that Leslie fired the fatal shots, but contended that he acted in self-defense.

### A. Trial

Trial commenced in the New York State Supreme Court, Kings County, in April 2016 before the Honorable Neil Jon Firetog.

The prosecution called two eyewitnesses to the shooting, who appear to have testified only reluctantly. Latrell Rickman — a local resident and acquaintance of Leslie's — testified that he saw Leslie enter the lobby of 3144 Bayview Avenue on Christmas Eve 2013. Tr. 182:14-21, ECF No. 12-1; *id.* at 183:3-5.[1] After he stated that he did not see who pointed a gun at English, the prosecution impeached that testimony by reading a portion of Rickman's grand jury testimony into the

---

[1] Page numbers to record citations other than briefs refer to ECF pagination.

2

record. *Id.* at 189:13-190:22. In the earlier proceeding, Rickman had testified that an individual named "Savage" held the door to the building open, allowing Leslie to point his gun at English as English was tying up his dog. *Id.* at 190:11-15. Rickman had also testified that Leslie fired several shots. *Id.* at 190:16-17. Leslie did so despite an individual — who Rickman named but did not describe — saying "Stop, don't do it. Don't do it." *Id.* at 190:15-16.[2]

Next, the People called Ramon Reyes, an acquaintance of Rickman's and Leslie's. Reyes testified that he and Leslie were in the lobby of 3144 Bay Avenue on Christmas Eve 2013. *Id.* at 220:6-8. After Reyes testified that he could not see or hear the shooting, the People introduced a written statement that Reyes had given to Detective Brian Ramos after Reyes had been arrested for selling narcotics. Reyes had stated that he witnessed Leslie start shooting as English tied up his dog. *Id.* at 222:6-9.[3] Reyes also said he witnessed English asking Leslie

---

[2] During cross-examination, trial counsel Frank Paone elicited answers that contradicted this testimony. *See, e.g.,* Tr. 212:14-213:9. ("I did not physically see, but I heard the shots. . . . No, I didn't hear any words from any one."). Paone also impeached Rickman's credibility by asking him about a February 2014 drug arrest that shortly predated his grand jury testimony. *See id.* at 212:2-13.

[3] Reyes's statement appears to indicate that English and some others tried to stop Leslie, but does not make the sequence of events precisely clear. *Id.* at 222:6-9. ("As [English] walk[ed] out [of] the building [Leslie] . . . [p]uts the gun to the back of [English's] head, we stop him from shooting at that moment as [English] goes to tie his dog up, [Leslie] starts shooting.").

3

to "stop." *Id.* at 234:2-5.[4] During cross-examination, Leslie's counsel — Frank Paone, Esq. — questioned Reyes about the size of English's dog and whether it was tied up, in an effort to support the justification theory. *See id.* at 231:1-233:5; *id.* at 133:22-134:3.

Detective Ramos then testified, introducing Leslie's admission that he had fired at English. Ramos had interviewed Leslie at the 60th Precinct police station after the shooting, *id.* at 318:23-319:16; Leslie made an oral statement that Ramos documented. *Id.* at 324:3-19.

According to Ramos's testimony, Leslie told him (in "sum and substance") that he had been in a relationship with English's cousin Ti-Ti. *Id.* at 324:20-24. Earlier in December, Ti-Ti had informed Leslie that she was pregnant with his child. *Id.* at 324:24-325:1. Leslie told Ramos that he was "caught by surprise" by this revelation, and believed it to be untrue. *Id.* at 325:1-325:6. This led Leslie to break off the relationship with Ti-Ti. *Id.*

A "few days" thereafter, Leslie had a verbal altercation with English and his now ex-girlfriend. This began with Ti-Ti screaming, from one of the windows at 3144 Bayview, at Leslie standing outside. *Id.* at 325:6-10. Leslie screamed

---

[4] On cross, Reyes ultimately allowed that his "attention was directed towards [his] friends and not what was going on with other people such as [Leslie] and [English]." *Id.* at 233:20-22.

4

back, "cursing at Ti-Ti." *Id.* at 325:10-12.  Then English surfaced at the window, telling Leslie "not to disrespect his cousin or he would have to fight him." *Id.* at 325:12-14.

The hostilities continued: Leslie told Ramos that English had written a Facebook post "which stated that [Leslie] was no good, so to speak." *Id.* at 325:16-18.  Then, on the day of the shooting, the hostilities escalated: one of English's cousins "poked" — that is, stabbed — Leslie. *Id.* at 325:18-20. (This latter assertion emerged in surprisingly brief passing on direct.)

Ramos then turned to Leslie's description of the shooting itself.  Leslie had "proceeded to the lobby" of 3144 Bayview and saw English "come out the elevator." *Id.* at 325:22-23.  At that point, English attempted to "sick" (sic) his pit bull on Leslie, and English "put his hand in his pocket, threatening he was going to shoot Mr. Leslie." *Id.* at 325:23-326:1.  Leslie told Ramos that he then pulled out a gun and began to shoot English. *Id.* at 326:2-4.[5]  Ramos placed Leslie under arrest after the interview. *Id.* at 328:6-7.

On cross-examination, Paone focused on the portions of Leslie's statement that suggested he had acted out of fear.

---

[5] Ramos testified that Leslie also made and signed a written statement in which he had "crossed out" certain portions.  The prosecution introduced that statement into the record, *id.* at 326:7-327:21, but neither party has produced the written statement in this proceeding.

Ramos reported Leslie's statement that he had "got a weapon to walk around with" after he had been stabbed. *Id.* at 339:21-24. Leslie had also stated that he was scared for his life, that English "had a big dog," and that he did not have an intention "on killing" English. *Id.* at 340:10-21.

Paone called no witnesses on behalf of the defense. *Id.* at 375:19-20. He moved to dismiss the case, arguing to Justice Firetog that there was "nothing" in the evidence "to refute" that Leslie acted in self-defense. *Id.* at 376:4-10. This motion was denied. *Id.* at 376:13.

In summation, Paone argued to the jury that Leslie "did not intend to cause the death of Yaquin English," and that he acted on "a reasonable belief he needed to do so for his self protection or justification." *Id.* at 391:8-11. Paone relied on Leslie's statement to Ramos, describing the "threats" directed at him by English, as well as the stabbing. *Id.* at 394:10-22. Paone asked the jurors to conclude that a reasonable person "might feel concerned for their welfare when a person [one is] having an argument with, in fact, has a pit bull with them." *Id.* at 395:8-10.

The court instructed the jury that the prosecution was "required to prove beyond a reasonable doubt, that the Defendant was not justified." *Id.* at 449:22-23. Justice Firetog added that "a person may use deadly physical force" when and if "he

6

reasonably believes it to be necessary" to defend against the "imminent use of . . . physical force [that is] readily capable of causing death or other serious physical injury." *Id.* at 450:1-14. The jury deliberated for five hours. It submitted three notes; one asked the judge to repeat the justification charge. *Id.* at 462:24-481:21.

The jury then found Leslie guilty of murder and criminal possession of a weapon. *Id.* at 482:12-20. Leslie was sentenced to twenty-two years to life imprisonment for murder, and a concurrent ten-year sentence for criminal possession. *Id.* at 500:10-14.

**B.   Appeal and Collateral Proceedings**

Leslie was represented by different counsel — Paul Skip Laisure and Benjamin Litman — on appeal. Br. Def.-App. ("App. Div. Br.") 31, ECF No. 12-2. Laisure and Litman raised three grounds: the prosecution had introduced insufficient evidence to overcome Leslie's justification defense beyond a reasonable doubt, the jury's verdict was against the weight of the evidence, and excessive sentencing. App. Div. Br. 16-31.[6] They did not argue that trial counsel was constitutionally

---

[6] "Sufficiency and weight review are distinct concepts" in New York. *People v. Kancharla*, 14 N.E.3d 354, 359 (N.Y. 2014). "A weight of the evidence claim is grounded in a state statutory provision, . . . whereas a sufficiency of the evidence claim is based on due process principles." *Williams v. McCarthy*, 708 F. Supp. 3d 309, 332 (W.D.N.Y. 2023), *appeal dismissed* (Oct. 29, 2024). "To determine whether a verdict was based on sufficient proof, a court must marshal competent facts most favorable to the

7

ineffective.  The Appellate Division affirmed the conviction and sentence.  *People v. Leslie*, 99 N.Y.S.3d 707, 708 (App. Div. 1st Dep't 2019).

The Court of Appeals denied leave to appeal on August 16, 2019.  *People v. Leslie*, 133 N.E.3d 408 (N.Y. 2019).  Leslie then filed an application for a writ of error *coram nobis* with the Appellate Division on September 22, 2020, arguing that appellate counsel was ineffective for failing to raise the ineffectiveness of trial counsel.  ECF No. 12-6.  Leslie argued that trial counsel should have pursued an extreme emotional disturbance ("EED") affirmative defense, instead of a justification defense.  *Id.* at 23-36.  While a justification defense is exculpatory, the EED affirmative defense mitigates a murder charge to manslaughter.  *People v. Harris*, 491 N.Y.S.2d 678, 691 (App. Div. 2d Dep't 1985).[7]  The Appellate Division denied this application on December 30, 2020, citing *Jones v.*

---

People and determine whether, as a matter of law, a jury could logically conclude that the People sustained their burden of proof."  *Kancharla*, 14 N.E.3d at 359.  On the other hand, "weight of the evidence review requires an intermediate appellate court to act, in effect, as a second jury."  *Id.*  "If it appears that the trier of fact has failed to give the evidence the weight it should be accorded, then the appellate court may set aside the verdict."  *People v. Bleakley*, 508 N.E.2d 672, 675 (N.Y. 1987).

[7] "To prove such an affirmative defense, a defendant must demonstrate, first, that he or she acted under the influence of an extreme emotional disturbance and, second, that there was a reasonable explanation or excuse for that disturbance."  *People v. Roche*, 772 N.E.2d 1133, 1138 (N.Y. 2002).

8

*Barnes*, 463 U.S. 745 (1983). *People v. Leslie*, 135 N.Y.S.3d 308 (App. Div. 1st Dep't 2020).[8]

**C.   The Instant Habeas Action**

Leslie filed the instant petition in this Court on February 22, 2021, and it is timely, notwithstanding the one-year statute of limitations in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").[9] In his petition, Leslie asserted that his conviction violated the United States Constitution's Sixth Amendment right to adequate representation for two reasons: ineffective assistance of trial counsel ("IATC") and ineffective assistance of appellate counsel. In his petition, Leslie admitted that he had not exhausted his IATC claim but asked this Court for a stay and hold of his petition in abeyance while he did so. Pet. 5, ECF No. 1. The Court declined to grant a stay and abeyance as Leslie had not shown good cause for his failure to exhaust nor that his claims were potentially meritorious. *See* Mem. & Order 4, ECF No. 11.

---

[8] The state obtained an affirmation from Samuel Barr — the attorney who sought leave from the Court of Appeals on direct appeal — describing his organization's appellate strategy. Barr Aff., ECF No. 12-8. Specifically, Barr affirmed that Paone's decision to pursue a justification defense "appears reasonable" and that the decision not to pursue an extreme emotional disturbance defense "involves facts not appearing in the record and could not have been raised on direct appeal." *Id.* ¶¶ 9-10.

[9] Leslie's conviction became final on November 16, 2019, ninety days after the New York Court of Appeals denied leave to appeal. *McKinney v. Artuz*, 326 F.3d 87, 96 (2d Cir. 2003). The statute was tolled during the period when his properly filed petition for collateral review was pending. *See* 28 U.S.C. §§ 2244(d)(1)-(2). It ran for 311 days between this date and Leslie filing his *coram nobis* application, and a further forty-eight days after his application was denied, for a total of 359 days. *See* Docket Order dated Jan. 18, 2022.

9

Regarding Leslie's remaining claim for ineffective assistance of appellate counsel, the state has "explained in its brief" that Leslie exhausted this claim, so it has "explicitly waived" exhaustion, and the Court "may consider this claim on the merits." *Cornell v. Kirkpatrick*, 665 F.3d 369, 376 (2d Cir. 2011);[10] Opp'n Br. 2, ECF No. 12.[11]

      As in his *coram nobis* petition, Leslie argues that appellate counsel was ineffective for not arguing trial counsel's ineffectiveness in failing to pursue an EED instead of "justification" (or self-defense) theory. Pet. Mem. 7-8, 14, ECF No. 1-2. Leslie believes the justification defense was "incompatible with the law, facts and surrounding circumstances of this case." Pet. 5.[12]

---

[10] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

[11] Despite the state's concession, it is not entirely clear that this claim was fully exhausted, either. "[T]he proper vehicle for advancing the ineffectiveness [of appellate counsel] claim . . . is a *coram nobis* petition to the Appellate Division." *Turner v. Miller*, 124 F. App'x 682, 683 (2d Cir. 2005). As discussed, Leslie so filed. However, "to fully exhaust *coram nobis* petitions, a petitioner "must pursue an application for leave to appeal to the New York Court of Appeals from the Appellate Division's denial." *Brooks v. Sticht*, No. 20-CV-1108, 2022 WL 1190456, at *13 (W.D.N.Y. Apr. 21, 2022) (collecting cases); *see* N.Y. Crim. Proc. Law § 450.90(1). Leslie did not pursue such an application.

[12] After the Court dismissed Leslie's IATC claim, the state filed its response. Leslie did not reply. However, because the Court had not set a deadline for any response, in May 2025, the Court *sua sponte* provided Leslie thirty days from receipt of its order to respond. *See* Docket Order dated May 13, 2025. He has not done so.

## II.   AEDPA Standard

28 U.S.C. § 2254, as amended by AEDPA, governs an application for a writ of habeas corpus for a person in custody pursuant to the judgment of a state court.  Under AEDPA, a petitioner challenging a determination that was "adjudicated on the merits" in state court must demonstrate that the state decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *Id.* § 2254(d)(2).  The state court's findings of fact are "presumed to be correct," and the petitioner can rebut this presumption only "by clear and convincing evidence."  *Id.* § 2254(e)(1).

A legal conclusion is "contrary to" clearly established federal law if it "contradicts the governing law set forth in" the Supreme Court's cases or "confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, yet "arrives at a result different from [that] precedent."  *Price v. Vincent*, 538 U.S. 634, 640 (2003).  And a decision involves an "unreasonable application" of federal law "if the state court identifies the correct governing legal principle" in the Supreme Court's decisions but "unreasonably

11

applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). It is the petitioner's burden to show that the state court applied the governing principle in an objectively unreasonable manner. *Price*, 538 U.S. at 641.

It is not enough that the federal court conclude, in its independent judgment, that the state court's decision was incorrect or erroneous: "[A] petitioner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Carmichael v. Chappius*, 848 F.3d 536, 544 (2d Cir. 2017) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

### III. Discussion

#### A. Ineffective Assistance — Established Law

*Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny apply to the evaluation of appellate counsel as well as trial counsel. *See, e.g.*, *Sellen v. Kuhlman*, 261 F.3d. 303, 315 (2d Cir. 2001). On habeas claims alleging ineffective assistance, "AEDPA review is doubly deferential." *Woods v. Etherton*, 578 U.S. 113, 117 (2016). *Strickland* "strongly" presumes that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional

12

judgment." *Id.* AEDPA layers on deference to the state court's decision — here, the Appellate Division's denial of Leslie's *coram nobis* petition. 28 U.S.C. § 2254(d)(1); *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (federal court looks to the last reasoned state-court decision). In these circumstances, federal courts must give "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013).

Under *Strickland*, a criminal defendant must overcome the "strong presumption" that counsel's performance fell "within the wide range of reasonable professional assistance." 466 U.S. at 689. This is an "objective standard of reasonableness." *Id.* at 688. Even if the defendant makes this showing, he does not yet qualify for relief. He must also establish prejudice: "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Where, as here, an ineffective assistance of appellate counsel claim is "based on failure to raise viable issues," a petitioner may establish constitutionally inadequate performance if he shows that his attorney "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Clark v. Stinson*, 214 F.3d 315, 322, 328 (2d Cir. 2000). "To establish prejudice . . . , a petitioner must

13

demonstrate that there was a reasonable probability that his claim would have been successful before the state's highest court." *Mayo v. Henderson*, 13 F.3d 528, 534 (2d Cir. 1994).

**B.  Application**

The Appellate Division dismissed Leslie's claim on the merits.  Accordingly, review is deferential under AEDPA.  Because the Appellate Division's decision was neither contrary to, nor an unreasonable application of, federal law, Leslie's petition must be denied.

No Supreme Court precedent requires counsel to make all possible arguments on appeal.  The Court rejected such a rule in *Jones*, which the Appellate Division relied on.  In *Jones*, an attorney declined to raise a "nonfrivolous" IATC claim on appeal, despite his client's request.  *Jones*, 463 U.S. at 750.  The Court explained that "advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal."  *Id.* at 751-52.  It described a rule requiring otherwise as "contrary to all experience and logic," and running the risk of "burying good arguments."  *Id.* at 753.  Thus, even assuming Leslie had asked Laisure or Litman to raise an IATC claim — and there is no indication he did — the Constitution would not have required them to so argue.  *Id.*

Nor must trial attorneys raise all possible defenses. "[A] lawyer's decision not to pursue a defense does not

14

constitute deficient performance if . . . the lawyer has a reasonable justification for the decision." *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005). In *Lopez v. Ercole*, for example, the Second Circuit denied habeas relief on an IATC claim where counsel had pursued a justification defense in a murder case and not EED. 588 F. App'x 39, 41 (2d Cir. 2014). It explained that the record provided a "valid basis" for the justification defense and "suggest[ed] that the EED argument was not a compelling one." *Id.* There, the defendant had a "turbulent relationship" with the victim, had suffered "frequent physical attacks" from the victim, and showed "presence of mind" and "comportment and cooperation" after the crime. *Id.*

      For similar reasons, Paone's decisions here appear eminently justified. The justification defense had support in the record. Leslie and English had at least one verbal altercation, which included physical threats, and English had made a negative post about Leslie on social media — all indicating a "turbulent relationship." Tr. 325:16-20. And Leslie had suffered a knife attack shortly before the shooting, after which he obtained a weapon. Finally, it was uncontroverted that English had a large dog with him, and there was some testimony that he may have directed the dog at Leslie.[13]

---

[13] For these reasons, Leslie is incorrect that he was "clearly" the initial aggressor. Pet. Mem. 14. Under New York law, an "initial aggressor"

On the other hand, the evidence supporting an EED affirmative defense was surely less compelling. The record included testimony that Leslie had asked Reyes to call English to the lobby. *Id.* at 219:10-220:17. The People could have used this testimony to argue that Leslie was attempting to lure English from his home. This, combined with Leslie's obtaining of a weapon on the day of the murder, are the type of "premeditated, deliberate, and calculated acts" that are "inconsistent and incompatible" with a defendant's assertion that he lost control. *People v. Bailey*, 37 N.Y.S.3d 592, 594 (App. Div. 2d Dep't 2016). Paone could have also reasonably concluded that raising EED "may have detracted from the justification defense that [he] actually presented." *Lopez*, 588 F. App'x at 41.

The applicable burdens also support Paone's decision. Under New York law, a defendant must prove an EED affirmative defense by a preponderance of the evidence. *People v. Roche*, 772 N.E.2d 1133, 1137-38 (N.Y. 2002). But once justification is raised, it requires the prosecution to *disprove* it beyond a reasonable doubt. *People v. Brown*, 125 N.E.3d 808, 811 (N.Y. 2019).

---

may not prevail on a defense of justification. N.Y. Penal Law § 35.15(2)(a)(i)-(ii).

16

Finally, even if Laisure and Litman had raised an IATC claim on appeal, it would have been procedurally improper. In New York, "where . . . an ineffective assistance of counsel claim turns on facts that are outside of the trial-court record, the claim *must* be brought in collateral proceedings, not on direct appeal." *Pierotti v. Walsh*, 834 F.3d 171, 178 (2d Cir. 2016). Leslie seeks to challenge Paone's decision to pursue one jury instruction over another. Such a challenge is generally appropriate on direct appeal only where counsel "explained his thinking in plain language on the record." *People v. Nesbitt*, 988 N.E.2d 478, 479 (N.Y. 2013). Here, however, Leslie points to no indication in the record speaking to why Paone pursued justification rather than EED. A collateral proceeding would thus have been needed to determine "why counsel acted as he did." *Id.* Leslie recognizes as much; he argues that appellate counsel should have filed a motion to vacate pursuant to New York Criminal Penal Law Section 440.10 to challenge trial counsel's performance. Pet. Mem. 9-10.[14]

---

[14] Such a proceeding would be particularly relevant here, "[a]s between defendant and his counsel, the decision whether to request submission of the affirmative defense of extreme emotional disturbance to the jury falls to defendant." *People v. Petrovich*, 664 N.E.2d 503, 504 (N.Y. 1996). Nothing in the record indicates, for example, that Leslie sought to request this defense, and counsel declined to do so, or that Leslie was unaware of the defense.

And to the extent Leslie argues that appellate counsel was ineffective in not filing a 440.10 motion, Pet. Mem. 9-10, that argument must fail. There is no right to counsel for collateral relief. *See Carranza v. United States*, 794 F.3d 237, 242 (2d Cir. 2015); *McFadden v. Keyser*, No. 20-CV-746, 2023 WL 3355204, at *9 (W.D.N.Y. Mar. 28, 2023) (collecting cases holding

17

Thus, any IATC claim would almost certainly have been rejected on appeal, whether procedurally or on the merits. Such "failure to make a meritless argument does not rise to the level of ineffective assistance." *United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995).

### IV.  Conclusion

For the foregoing reasons, Leslie's petition for a writ of habeas corpus is denied and this case is dismissed. No certificate of appealability shall issue because Leslie has not made a substantial showing that he was deprived of any constitutional right. *See* 28 U.S.C. § 2253(c)(2). The Court certifies that any appeal of this order would not be taken in good faith, and thus *in forma pauperis* status is denied for the purposes of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The Clerk of Court is respectfully directed

---

that there is no right to counsel for 440.10 motions), *report and recommendation adopted*, 2023 WL 3344446 (W.D.N.Y. May 9, 2023). Accordingly, Leslie could not have been deprived of effective assistance. *See Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982) ("Since respondent had no constitutional right to counsel, he could not be deprived of the effective assistance of counsel by his retained counsel's failure to file the application timely.").

18

to enter judgment, mail a copy of this order to Leslie, note the mailing on the docket, and close this case.

SO ORDERED.


                                                    /s/ Eric Komitee  
                                                  ERIC KOMITEE  
                                                  United States District Judge


Dated:    December 9, 2025  
            Brooklyn, New York